# Koett et al. v. Tate.

(Decided March 14, 1933.)

WARE & WARE for appellants.
ROUSE & PRICE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Several years ago the owners laid out what is known as the Park Hills subdivision in Kenton county. The first lots sold were on streets near and south of the street railway. On some of these lots 24 two-family apartments, or St. Louis flats, were erected. Later on what is known as the Light Hills section of the subdivision was developed, and numerous lots were sold. On these lots, which are located some distance from the lots on which the 24 St. Louis flats were erected, were built residences varying in costs from $11,000 to $40,000. In 1931 Chloe Koett and her husband, A. B. Koett, acquired a lot in the Light Hills section of the Park Hills subdivision. In the fall of that year T. Bracken Tate began the erection on a lot which he had purchased in that section of a St. Louis flat, or a house with two apartments. Thereupon the Koetts brought suit against Tate to enjoin the erection of the two-apartment house on the ground that the building violated the restrictions contained in the deeds to all the lots in the subdivision. From an adverse decision they have prosecuted this appeal.

All the lots in the subdivision were sold subject to the following restrictions:

"1. Said lot shall be used for residential purposes only, and no business of any kind shall be conducted thereon within a period of twenty-five years from date, and only one dwelling shall be erected on the property hereby conveyed."

It is conceded that the erection of the two-apartment house would not violate the provision that the lot should be used for residential purposes only, McMurtry v. Phillips Investment Co., 103 Ky. 308, 45 S. W. 96, 19 Ky. Law Rep. 2021, 40 L. R. A. 489; Struck v. Kohler, 187 Ky. 517, 219 S. W. 435, but insisted that

it did violate the covenant that only "one dwelling" should be erected on the property conveyed. There is a wide difference of opinion among the courts as to the meaning of the words "one dwelling house" or "one dwelling" in restrictive covenants, some of the courts holding that the restriction is against plurality of use or occupancy, while others take the position that it is against plurality of houses. Cases supporting the first view are Powers v. Radding, 225 Mass. 110, 113 N. E. 782; Harris v. Roraback, 137 Mich. 292, 100 N. W. 391; 109 Am. St. Rep. 681; Rosenzweig v. Rose, 201 Mich. 681, 167 N. W. 1008; Sanders v. Dixon, 114 Mo. App. 229, 89 S. W. 577; Gillis v. Bailey, 17 N. H. 18; Rogers v. Hosegood, 2 Ch. 388, 69 L. J. Ch. N. S. 652, 48 Week. Rep. 659, 83 L. T. N. S. 186, 16 Times L. R. 489. These cases proceed on the theory that a building planned or designed for two or more dwellings cannot be properly described as one dwelling, or one-dwelling house, and that either the restriction means one dwelling for a single family on each lot or there is no restriction except one house on each lot designed to be a dwelling for as many families or persons as the owner sees fit. Cases taking a contrary view are Pierson v. Rellstab Bros., 219 App. Div. 552, 219 N. Y. S. 404; Id., 246 N. Y. 608, 159 N. E. 671; Frederick v. Hay, 104 Ohio St. 292, 135 N. E. 535; De Lanley v. Van Ness, 193 N. C. 721, 138 S. E. 28, 57 A. L. R. 238; Crane v. Hathaway, 132 A. 748, 4 N. J. Misc. 293; Johnson v. Jones, 244 Pa. 386, 90 A. 649, 52 L. R. A. (N. S.) 325; Bolin v. Tyrol Invest. Co., 273 Mo. 257, 200 S. W. 1059, L. R. A. 1918C, 869. The latter cases proceed on the theory that restrictive covenants should be strictly construed, and that, in the absence of language such as "for the use of one family," or other specific limitations, general words, such as "one dwelling house," are not a restriction on the use or occupancy of the house. As the two views of the question are directly opposed, it is not possible of course to harmonize them. Without adopting either view, we regard as of controlling importance the fact that prior to appellant's purchase 24 apartment houses like the one proposed to be built by appellee had been erected in the subdivision, though not in the particular section where appellee was proposing to build. It may be that the erection of the 24 apartment houses was so remote from the lots purchased by appellants that their purchase with knowledge will not estop them

from obtaining an injuction, 27 R. C. L. 772; Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S. W. (2d) 687, but we advert to the fact of such construction for another purpose. One of the elements that influenced the decisions of the court in Underwood v. Herman & Co., 82 N. J. Eq. 353, 89 A. 21, where the restriction was not to erect any building other than "a dwelling house," was the fact that a considerable number of two family houses had been erected, and thus language of an uncertain and indefinite character had received a practical interpretation by the grantors and grantees. Following the same reasoning, the Supreme Court of Michigan, one of the courts holding to the view that a restriction against more than one dwelling or dwelling house is violated by a two-story apartment, held that a covenant to erect only "a dwelling" does not prohibit the erection of a double house designed for two families, one on each floor, where other houses of the same character have been erected in the same subdivision without objection. Here all the lots in the entire subdivision were sold under the same restrictions. At the time of appellants' purchase, 24 apartment houses similar to the one proposed to be erected by appellee had already been erected. Thus the grantors. and grantees have placed upon the uncertain language of the restriction a practical and definite interpretation, which it would not be fair and equitable to reject on behalf of those who purchased with knowledge of such interpretation. It follows that the refusal of the injunction was proper.

Judgment affirmed.